UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **RIAD SALAMEH**<br>　　Street 10<br>　　Matn District<br>　　Rabieh, Mount Lebanon<br>　　Lebanon<br><br>　　　　　　　　*Plaintiff*,<br><br>v.<br><br>**Lisa Palluconi, in her official capacity as**<br>　　**Acting Director of the United States**<br>　　**Department of the Treasury,**<br>　　**Office of Foreign Assets Control**<br>　　1500 Pennsylvania Avenue, NW<br>　　Freedman's Bank Building<br>　　Washington, D.C. 20220<br><br>　　　　　　　　*Defendant*,<br><br>and<br><br>**THE UNITED STATES DEPARTMENT**<br>**OF THE TREASURY, OFFICE OF FOREIGN**<br>**ASSETS CONTROL**<br>　　1500 Pennsylvania Avenue, NW<br>　　Freedman's Bank Building<br>　　Washington, D.C. 20220<br><br>　　　　　　　　*Defendant*. | Case No. 1:24-cv-03236<br><br>**COMPLAINT FOR**<br>**DECLARATORY AND**<br>**INJUNCTIVE RELIEF** |

Plaintiff Riad Salameh brings this Complaint for Declaratory and Injunctive Relief against Defendants the United States Department of the Treasury's Office of Foreign Assets Control ("OFAC") and its Acting Director, Lisa Palluconi, and in support of his complaint alleges the following:

**NATURE OF THE CASE**

1. This Complaint arises from OFAC's unlawful designation of Plaintiff under Executive Order ("E.O") 13441, and its failure to afford Plaintiff adequate post-deprivation notice of his E.O. 13441 designation.

2. Plaintiff was the former Governor of Banque du Liban ("BdL"), Lebanon's Central Bank, from April 1, 1993 until July 31, 2023. Prior to his work at the BdL, Plaintiff was employed as a banker at Merrill Lynch in France and Lebanon for approximately twenty years.

3. On August 10, 2023, OFAC designated Plaintiff under E.O. 13441 and added his name to the Specially Designated Nationals and Blocked Persons ("SDN") List. OFAC designated Plaintiff for "having taken, or posing a threat of taking, actions that have the purpose or effect of contributing to the breakdown of the rule of law in Lebanon." U.S. Dep't of the Treasury, *Joining Partners, U.S. Treasury Sanctions Former Central Bank Governor of Lebanon and Co-conspirators in International Corruption Scheme*, Aug. 10, 2023, *available at*: https://home.treasury.gov/news/press-releases/jy1687; Notice of OFAC Sanctions Actions, 88 Fed. Reg. 56,921 (Aug. 21, 2023).

4. OFAC's press release announcing Plaintiff's designation, however, does not allege how Plaintiff contributed to the breakdown of the rule of law in Lebanon. Instead, OFAC makes several allegations in support of its designation action to conclude that Plaintiff "likely" violated Lebanese law during his time as Governor of BdL.

5. Specifically, the press release announcing his designation alleges that Plaintiff, during his time as Governor of the BdL, used a shell company owned by his brother, Raja Salameh, Forry Associates, to transfer millions of dollars from transactions involving the BdL. *Id*. OFAC further alleged that Plaintiff diverted funds to his personal accounts and accounts in the names of

2

other shell companies, and that he transferred funds to property management companies in various countries that were registered in his, his son's, and his former partner's, Anna Kosakova's, name. *Id*. OFAC's press release also alleges that Plaintiff used shell companies in Panama and a trust in Luxembourg to purchase shares in a company his son worked at and later sold those shares to a Lebanese bank regulated by the BdL. *Id*.

6. OFAC's press release announcing Plaintiff's designation does not explain how Plaintiff's alleged actions violate Lebanese law. Rather, the allegations in OFAC's press release conclude that Plaintiff's purported actions resulted in a "likely" violation of Lebanese law. Indeed, OFAC's findings and conclusions in support of its designation action do not offer any determinative findings of violating Lebanese law, beyond speculating that violations of such foreign law may have occurred.

7. Further, OFAC's press release does not identify how alleged violations of law have the purpose of or contribute to the breakdown of the rule of law. As the Court is aware, the term rule of law is commonly defined as a principle under which all persons, institutions, and entities are accountable to laws that are: publicly promulgated; equally enforced; independently adjudicated; and consistent with international human rights principles. The Administrative Offices of the U.S. Courts, *Overview - Rule of Law*, *available at*: https://www.uscourts.gov/educational-resources/educational-activities/overview-rule-law#:~:text=Rule%20of%20law%20is%20a,with%20international%20human%20rights%20principles. OFAC's press release has not identified how Plaintiff's purported actions—which he denies—have led to his or others non-accountability to Lebanese laws, how those actions caused the laws to not be equally enforced or independently adjudicated, or are otherwise inconsistent with international human rights principles.

8. As a result of his designation, Plaintiff is identified on the SDN List. Further, all of Plaintiff's property and interests in property that are in the United States, or that come within the possession or control of U.S. persons, are blocked and cannot be dealt in. Exec. Order No. 13441 § 1(a). U.S. parties are also generally prohibited from engaging in virtually all transactions with Plaintiff, including by providing him any goods or services, absent authorization from OFAC, and foreign persons risk being designated for acting for or on behalf of Plaintiff. Exec. Order No. 13441 § 1(a)(i)(D); 31 C.F.R. § 549.201(b). Defendants therefore have effectively imposed an effective global ban on dealings with Plaintiff, which is causing him irreparable personal and reputational harm.

9. Defendants' unlawful designation action and its lack of notice for the reasons for Plaintiff's designation prevents him from having a meaningful opportunity to challenge it before OFAC. As a result, Defendants' actions violate the Administrative Procedure Act ("APA"). Accordingly, Plaintiff respectfully requests this Court's intervention.

## JURISDICTION AND VENUE

10. This action arises under the APA, 5 U.S.C. § 701 *et seq.*, and this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws of the United States.

11. This Court may grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and Fed. R. Civ. P. Rule 57. This Court may grant injunctive relief in accordance with Fed. R. Civ. P. Rule 65.

12. Venue is proper in the District of Columbia pursuant to 28 U.S.C. §§ 1391(b) and (e), as the Defendants reside in this District.

## **THE PARTIES**

13. Plaintiff is a Lebanese national, and he currently resides at Street 10, Matn District, Rabieh, Mount Lebanon, Lebanon. Plaintiff served as the Governor of the BdL from April 1, 1993 until July 31, 2023.

14. During his time as Governor of the BdL, Plaintiff was recognized on multiple occasions, including in 2019, as one of the best bankers in the world and was awarded an "A" grade among ninety-four central bank governors by the Global Finance Magazine. Further, Plaintiff was instrumental in the adoption and implementation of anti-money laundering ("AML") regulations in Lebanon, which ultimately led to Lebanon being removed from the Financial Action Task Force's ("FATF") "grey list," a list of jurisdictions FATF monitors closely to assess those jurisdictions' progress in combatting money laundering.

15. Plaintiff was also instrumental in the adoption of the regulations fighting tax avoidance and implementing the Organisation for Economic Co-operation and Development ("OECD") Common Reporting Standard ("CRS"). The CRS is an information standard for the Automatic Exchange of Information ("AEOI") regarding financial accounts on a global level between tax authorities of various countries. Further, during Plaintiff's tenure, a compliance unit specifically dedicated to these matters was created within the BdL.

16. Additionally, Plaintiff also was pivotal in implementing compliance with Foreign Account Tax Compliance Act ("FATCA")—a law requiring non-U.S. financial institutions to report assets of U.S. citizens to the United States Department of the Treasury—in Lebanon. As a result of his efforts, transparency was improved for U.S. citizens holding financial accounts at financial institutions in Lebanon.

17. Prior to assuming public office as the Governor of the BdL, Plaintiff was a well-known banker at Merrill Lynch in France and Lebanon from 1973 to 1993.

18. On August 10, 2023, Plaintiff was designated under E.O. 13441, and his name was added to the SDN List, which is maintained and administered by OFAC.

19. Defendant OFAC is a United States federal administrative agency located in the United States Department of the Treasury, 1500 Pennsylvania Ave., NW, Freedman's Bank Building, Washington D.C. 20220. OFAC is responsible for maintaining and administering the SDN List, including by placing persons on and removing persons from the SDN List consistent with IEEPA, E.O. 13441, and its implementing regulations in 31 C.F.R. Parts 501 and 549, the "Reporting, Procedures and Penalties Regulations" and the "Lebanon Sanctions Regulations," respectively. Defendant OFAC was responsible for designating Plaintiff under E.O. 13441 and adding his name to the SDN List.

20. Defendant Lisa Palluconi is the Acting Director of OFAC. In this role, Defendant Palluconi is responsible for overseeing and directing OFAC's operations.

## FACTUAL ALLEGATIONS

### A.    OFAC Designates Plaintiff Under Executive Order 13441

21. Pursuant to the International Emergency Economic Powers Act ("IEEPA"), on August 1, 2007, President Bush issued E.O. 13441, Blocking Property of Persons Undermining the Sovereignty of Lebanon or Its Democratic Processes and Institutions, to address the "actions of certain persons [who] . . . contribute to the deliberate breakdown in the rule of law in Lebanon . . . or [who] infringe upon or undermine Lebanese sovereignty contribute to political and economic instability." Exec. Order No. 13441. This E.O. authorizes the Secretary of the Treasury, in

6

consultation with the Secretary of State, to impose sanctions on foreign persons determined to meet certain criteria set forth in the Order.

22.     Specifically, E.O. 13441 contains designation criteria for persons the Secretary of the Treasury, in consultation with the Secretary of State, determines have "taken, or to pose a significant risk of taking, actions . . . that have the purpose or effect of undermining Lebanon's democratic processes or institutions, contributing to the breakdown of the rule of law in Lebanon." Exec. Order No. 13441 § 1(a)(i)(A).

23.     Taking such action blocks the sanctioned party's property and interests in property in the United States, that come within the United States, or that come within the possession or control of any U.S. person. Exec. Order No. 13441 § 1(a). This blocked property cannot be transferred, paid, exported, withdrawn, or otherwise dealt in. *Id*. As a result, U.S. persons are generally prohibited from virtually all dealings with persons blocked under E.O. 13441. *See* 31 C.F.R. § 549.201(b).

24.     Section five of E.O. 13441 authorizes the Secretary of the Treasury, in consultation with the Secretary of State, to "take such actions, including the promulgation of rules and regulations, and to employ all powers granted to the President by IEEPA, as may be necessary to carry out the purposes of this order." Exec. Order No. 13441 § 5. Further, consistent with applicable law, the Secretary of the Treasury may redelegate any of these authorities to other officers and agencies of the United States Government. *Id*.

25.     On August 10, 2023, OFAC designated Plaintiff pursuant to E.O. 13441 for "having taken, or posing a threat of taking, actions that have the purpose or effect of contributing to the breakdown of the rule of law in Lebanon." U.S. Dep't of the Treasury, *Joining Partners, U.S.*

*Treasury Sanctions Former Central Bank Governor of Lebanon and Co-conspirators in International Corruption Scheme*.

26. In designating Plaintiff, however, OFAC does not allege any conduct by Plaintiff that can reasonably be stated to relate to the breakdown of the rule of law in Lebanon. Instead, OFAC makes several allegations against Plaintiff to conclude that his alleged actions "likely" violated the rule of law in Lebanon.

27. For example, OFAC describes purported "unlawful self-enrichment schemes" that Plaintiff allegedly engaged in to divert millions of dollars from transactions involving the BdL. *Id*. Specifically, OFAC alleges that Plaintiff, as Governor of the BdL, approved a contract that allowed Raja Salameh's company, Forry Associates, to take a commission on purchases of financial instruments by Lebanese retail banks from the BdL even though his brother's company allegedly did not provide any benefit for these transactions. *Id*. OFAC alleges that Plaintiff and Raja Salameh then moved these funds to their own personal accounts or accounts of other shell companies. *Id*. OFAC's press release does not identify that such alleged actions violate Lebanese law, nor identify which Lebanese laws were implicated by the alleged activities.

28. Further, OFAC alleges that Plaintiff frequently transferred funds to property management companies in France, Germany, Luxembourg, and Belgium that were registered in Nady Salameh's and Anna Kosakova's name. *Id*. Additionally, Anna Kosakova owned companies that received funds from Forry Associates and purchased properties located in Paris, France in Plaintiff's and her name. *Id*. These properties included apartments and an office building on the "Champs-Elysées where the BdL rented space for its 'continuity of operations' center." *Id*. OFAC's press release does not identify that such alleged actions violate Lebanese law, nor identify which Lebanese laws were implicated by the alleged activities.

8

29. In addition, OFAC alleges in its press release that Plaintiff used shell companies in Panama and a trust in Luxembourg to purchase shares in a company where Nady Salameh worked as an investment advisor, but Plaintiff then later allegedly sold these shares to a bank in Lebanon regulated by the BdL. *Id*. OFAC's press release does not identify that such alleged actions violate Lebanese law, nor identify which Lebanese laws were implicated by the alleged activities. Instead, OFAC concludes that this transaction represents a "*likely* violation of Lebanese law prohibiting employees of BdL from profiting from other private businesses." *Id*. (emphasis added).

30. As noted above, OFAC's press release merely states that Plaintiff's alleged actions "likely" violated Lebanese law, but does not identify how such likely violations of law relate to the breakdown of the rule of law as that term has been commonly defined, including by U.S. federal courts. Indeed, OFAC's press release does not allege that Plaintiff's conduct impacted the accountability of persons, institutions, or entities to laws that are publicly promulgated; equally enforced; independently adjudicated; and consistent with international human rights principles.

31. OFAC's press release does not identify any basis under E.O. 13441, nor any other OFAC-administered legal authority, that persons can be sanctioned under those authorities for likely violating laws in Lebanon.

32. As a result of his designation under E.O. 13441, Plaintiff's property and interests in property within the United States or within the possession or control of U.S. persons are blocked and cannot be transferred, paid, exported, withdrawn, or otherwise dealt in. Exec. Order No. 13441 § 1(a). In addition, as a result of this designation, Plaintiff's name appears on OFAC's SDN List with the [LEBANON] identifier.

### B. Harm Suffered by Plaintiff

33. Defendants' decision to designate Plaintiff continues to cause Plaintiff severe personal and reputational harm. Specifically, as a result of his designation, all of Plaintiff's property and interests in property that are in the United States, or that come within the possession or control of a U.S. person, are blocked and cannot be dealt in. Further, U.S. parties are generally prohibited from dealing with Plaintiff, including by providing him any type of goods or services. As foreign parties also face sanctions designation exposure for dealing with Plaintiff, Defendants' action effectively prevents Plaintiff from engaging in most dealings with anyone.

34. OFAC's designation of Plaintiff under E.O. 13441 also continues to have a devasting impact on his personal and business life. Plaintiff continues to endure the reputational damage and suffer from the mental and emotional distress of him and his family due to the unlawful sanctions designation applied to him. Further, the U.S. government's designation of Plaintiff for alleged activities for which he is already being investigated and prosecuted gives an imprimatur of the validity of those allegations which unduly and unfairly biases Plaintiff in his defense against such allegations in those foreign jurisdictions.

35. Plaintiff's ongoing suffering is a direct result of the actions taken by Defendants.

## CAUSES OF ACTION

### COUNT I

**DEFENDANTS' DESIGNATION OF PLAINTIFF UNDER SECTION 1(a)(i)(A) OF E.O. 13441 CONSTITUTES ARBITRARY AND CAPRICIOUS AGENCY ACTION AND IS NOT IN ACCORDANCE WITH LAW UNDER THE ADMINISTRATIVE PROCEDURE ACT**

36. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

37. The APA empowers a reviewing court to set aside agency action found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, or without observance of procedure required by law. 5 U.S.C. § 706(2).

38. Under the APA, "agency action" includes "an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13).

39. Defendants' determination that Plaintiff meets the criteria for designation under Section 1(a)(i)(A) of E.O. 13441 is arbitrary, capricious, and not in accordance with the law, in violation of the APA. Specifically, Defendants have failed to provide a reasoned explanation as to how Plaintiff's alleged conduct had the purpose or effect of contributing to the breakdown of the rule of law in Lebanon. Indeed, the allegations in Defendants' press release merely conclude that Plaintiff's actions "likely" resulted in a violation of the law in Lebanon. Defendants do not state that any violations of Lebanese law actually occurred, nor how a violation of Lebanese law has the purpose or effect of contributing to the breakdown of the rule of law in Lebanon.

40. Accordingly, as Defendants have not alleged specific conduct by Plaintiff that is sanctionable under Section 1(a)(i)(A) of E.O. 13441, there is no factual or legal basis for Plaintiff's designation under that authority. Defendants have therefore acted in an arbitrary and capricious manner and not in accordance with law in designating Plaintiff and have violated the APA.

**COUNT II**

DEFENDANTS' FAILURE TO PROVIDE PLAINTIFF WITH ADEQUATE NOTICE AS TO THE REASONS FOR HIS DESIGNATION UNDER E.O. 13441 VIOLATES HIS DUE PROCESS RIGHTS UNDER THE ADMINISTRATIVE PROCEDURE ACT

41. Plaintiff re-alleges and incorporates by reference as if fully set forth herein the allegations in all preceding paragraphs.

42. Agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or without observance of procedure required by law shall be held unlawful by a reviewing court and set aside. 5 U.S.C. § 706(2)(A), (D).

43. Plaintiff has an administrative due process right to adequate post-designation notice. Defendants have failed to provide this administrative due process right, but not affording Plaintiff notice as to how his alleged activities have the purpose or effect of contributing to the breakdown of the rule of law in Lebanon.

44. Defendants' failure to provide Plaintiff with adequate and fair notice of the reasons and information relied upon to designate him under E.O. 13441 § 1(a)(i)(A) is not in accordance with the law, and without observance of procedure required under the APA in violation of OFAC's due process obligations, and therefore in violation of the APA.

### RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare Defendant OFAC's action to designate Plaintiff under Section 1(a)(i)(A) of E.O. 13441 to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law in violation of 5 U.S.C. § 706(2)(A);

B. Order Defendant OFAC to vacate Plaintiff's E.O. 13441 designation and remand the matter to Defendants for reconsideration in light of the Court's declaration that Plaintiff's designation is unlawful;

C. Order Defendants to produce the unclassified version of the administrative record and through unclassified summaries the classified or otherwise privileged information contained in the administrative record to apprise Plaintiff of the reasons for his designation under E.O. 13441;

D. Grant an award to Plaintiff's costs and attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412 *et* seq., and any other applicable provision of law; and

E. Grant such other and further relief as the Court may deem just and proper.

Dated: November 15, 2024

Respectfully submitted,

/s/ Erich C. Ferrari
Ferrari & Associates
1455 Pennsylvania Ave., NW
Suite 400
Washington, D.C. 20004
Telephone: (202) 280-6370
Fax: (877) 448-4885
Email: ferrari@falawpc.com
D.C. Bar No. 978253

*Attorney for Plaintiff*